## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIK BLAIR,** *R.N.*, | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) **2:12-cv-683** |
| **v** | ) |
| **COMMONWEALTH OF PENNSYLVANIA,** | ) |
| **PENNSYLVANIA DEPARTMENT OF STATE**, | ) |
| **PENNSYLVANIA BUREAU OF** | ) |
| **PROFESSIONAL AND OCCUPATIONAL** | ) |
| **AFFAIRS, PENNSYLVANIA DIVISION OF** | ) |
| **PROFESSIONAL HEALTH MONITORING** | ) |
| **PROGRAMS, THE DISCIPLINARY** | ) |
| **MONITORING UNIT, THE PENNSYLVANIA** | ) |
| **NURSE PEER ASSISTANCE PROGRAM**, | ) |
| **VOLUNTARY RECOVERY PROGRAM** | ) |
| *and* **PENNSYLVANIA STATE BOARD OF** | ) |
| **NURSING** | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM OPINION AND ORDER OF COURT</u>

Now pending before the Court are the MOTION FOR TEMPORARY RESTRAINING

ORDER (Document No. 2) filed by Plaintiff Erik Blair, with brief in support; and the MOTION

TO DISMISS (Document No. 6) filed by Defendants (collectively "the Commonwealth").[1]  The

motions have been thoroughly briefed and are ripe for disposition.


<u>Factual and Procedural History</u>

This case involves Plaintiff's nursing license.  Briefly summarized, Blair has a history of

heroin addiction and a present diagnosis of heroin dependence disorder.  He suffered relapses in

2005 and 2006.  In 2007, he was incarcerated for a felony theft conviction, during which time he

---

[1] The named Defendants, with one exception, are entities of the Commonwealth of Pennsylvania.  The remaining
Defendant, the Pennsylvania Nurse Peer Assistance Program ("PNAP"), is a private, non-profit entity which has
joined in the motion to dismiss.

was "detoxed" from heroin.  Since that time, Blair has participated in the PNAP program and

Narcotics Anonymous and has passed seventy-six (76) drug and alcohol tests over the past thirty

months.  Blair has been gainfully and successfully employed as a nurse by Interim HealthCare of

Pittsburgh since November 2008.  He has been assigned to the daylight shift of in-home care of

an individual patient, a ventilator-dependent quadriplegic who receives around-the-clock care

from a team of five nurses and numerous other health professionals.  The patient has not been

prescribed any narcotics.

In 2006, the State Board of Nursing ("SBN") suspended Blair's license for one year.  In

September 2008, the SBN reissued his license without restriction.  In October 2008, the SBN

requested a mental and physical health evaluation of Blair by Dr. Robert Wettstein, who opined

that Blair was safe to practice nursing, but only if he participated in a structured monitoring and

treatment program for three to five years due to his opiate dependence disorder.  In March 2009,

the SBN filed a petition to suspend Blair's nursing license.

In January 2010, an extensive hearing was held by the SBN.  Plaintiff's Exhibit H is a

transcript of the hearing.  Blair participated and was represented by counsel.  Dr. Wettstein

testified.  Psychiatrist Dr. Alexandre Dombrovski also testified, on behalf of Blair, and opined

that Blair's opiate dependency is in "full sustained remission" such that he was safe to practice

nursing with accomodations.  In October 2010, Chief Hearing Officer Frank C. Kahoe, Jr. issued

a 14-page, written Proposed Adjudication and Order which contained extensive Findings of Fact

and Conclusions of Law and a Proposed Order which placed numerous conditions on Blair's

license.  *See* Plaintiff's Exhibit B.  Most notably, the decision prohibited Blair from practicing

"in a private practice setting or without direct supervision," which it defined as the "physical

presence of the supervisor on the premises."  This condition would prevent Blair from

performing his existing nursing duties.  Blair filed timely objections to the Proposed

Adjudication and Order.  On May 1, 2012 the SBN issued a Final Adjudication and Order

("BON Final Order") which adopted the Proposed Adjudication and Order.  Blair's nursing

license was "indefinitely suspended" for a period of at least three years, although the suspension

was stayed in favor of a period of probation with forty-two (42) itemized conditions.  The SBN

Final Order was to take effect thirty days after mailing.

In January 2012, Blair and PNAP entered into a PNAP Monitoring/Treatment Contract,

which provided retroactive credit for his participation in the program dating back to November

2009.  Upon issuance of the Final Order, PNAP sought to conform its PNAP

Monitoring/Treatment Contract to the terms of the SBN Final Order, which denied retroactive

credit.

On May 22, 2012, Blair filed a Complaint and motion for emergency relief in this Court,

in which he alleges violations of the Americans With Disabilities Act ("ADA") and

Rehabilitation Act (RA").  In essence, Blair contends that he is a qualified individual with a

disability, who is able to perform his job as a home health agency nurse with reasonable

accommodations.  He contends that he receives adequate supervision in his current work setting.

Moreover, he seeks retroactive credit for his participation in treatment, monitoring and

rehabilitation programs during the lengthy period of time during which the SBN proceeding was

under consideration.  Count I of the Complaint seeks injunctive relief.  Count II seeks

declaratory judgment.  Count III is titled an "Appeal" of the SBN Final Order.  Count IV claims

retaliation under the ADA and RA and Count V asserts a claim for breach of contract against

PNAP.

On May 29, 2012 the Court held a hearing and argument on Blair's motion for emergency relief.  Thereafter, Blair filed an appeal of the SBN Final Order with the Commonwealth Court of Pennsylvania.  In addition, the parties report that they have agreed to stay the provision of the SBN Final Order which requires Blair to work only in a supervised setting.

Legal Analysis

Defendants contend that this Court lacks subject-matter jurisdiction over this case based on the *Rooker-Feldman* and/or *Younger* abstention doctrines.  The Court must satisfy itself of its jurisdiction before addressing the merits of Plaintiff's claims.

A. General Principles of Abstention

The United States Court of Appeals for the Third Circuit has provided the following synopsis of the general principles of abstention:

> Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or agency will have the opportunity to decide the matters at issue. The doctrine is rooted in concerns for the maintenance of the federal system and represents an extraordinary and narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. Consequently, abstention is justified only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest. In other words, abstention from the exercise of federal jurisdiction is appropriate only under certain limited circumstances. Those circumstances are loosely gathered under discrete concepts of abstention named after leading Supreme Court cases, viz., "*Pullman*" ( *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)); " *Burford*" ( *Burford v. Sun Oil Co*., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)); "*Younger*" ( *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)); and "*Colorado River*" ( *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, (1976)).

*Miller v. Ayres*, 2009 WL 1230877 (W.D. Pa. 2009) (quoting *Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 303 (3d Cir. 2004)).

In this case, Defendants cite to both the *Rooker-Feldman* and *Younger* abstention doctrines.  Therefore the Court will address each doctrine.  However, it is apparent from Defendants' Supplemental Brief that their primary focus is on *Younger* abstention.


B. *Rooker–Feldman* Abstention

The *Rooker–Feldman* abstention doctrine bars lower federal courts from exercising subject-matter jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *FOCUS v. Allegheny County Ct. of Common Pleas*, 75 F.3d 834, 840 (3d Cir.1996); *see also Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291–92 (2005) (explaining that 28 U.S.C. § 1257 vests authority to review a state court's judgment solely in the Supreme Court).  The *Rooker–Feldman* doctrine is to be interpreted narrowly and excludes only those matters that would require review of a state court judgment. *See Lance v. Dennis*, 546 U.S. 459, 464 (2006) (explaining that *Rooker–Feldman* is "a narrow doctrine," confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

"[T]here are four requirements that must be met for the *Rooker–Feldman* doctrine to require abstention: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the

state judgments." *Manu v. National City Bank of Indiana*, 2012 WL 928158 (3d Cir. March 20, 2012) (*citing Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)). The *Manu* Court further explained that despite numerous references in the case law, the phrase "inextricably intertwined" does not create an additional test or expand the scope of the doctrine.

Defendants contend that *Rooker-Feldman* abstention applies because: (1) the issue of Blair's nursing license was actually litigated before the SBN; (2) proceedings before the SBN are "judicial" in nature; and (3) this case is the functional equivalent of an appeal from that Final Order. Defendants point out that Blair has a right to appeal to the Pennsylvania Commonwealth Court, and has now exercised that right by filing such an appeal. Defendants also contend that *Rooker-Feldman* abstention applies because this case is inextricably intertwined with the state adjudication. Blair contends that *Rooker-Feldman* abstention does not apply because: (1) he is challenging an administrative agency decision, rather than an adverse judgment in a state "court"; (2) he is seeking a remedy for an independent injury to his rights created by federal law to be free from discrimination by reason of his disability; and (3) the Supreme Court has abandoned the "inextricably intertwined" analysis.

The Court agrees with Blair. It is not sufficient for the state proceedings to be "judicial in nature." In *National R.R. Passenger Corp. v. Pennsylvania Public Utility Com'n,* 342 F.3d 242, 257 (3d Cir. 2003), the Court of Appeals explained that even if an administrative agency proceeding "may have some indicia of court proceedings, [it] is not a court of record and it is therefore not entitled to the application of *Rooker-Feldman*." The SBN is not a "court." Defendants' reliance on *Kendall v. Russell*, 572 F.3d 126, 131 (3d Cir. 2009), is misplaced. That decision concluded that proceedings before a Virgin Islands Commission were <u>not</u> "judicial in

nature."  Moreover, the *Kendall* Court was applying the "*Younger*" abstention doctrine.  The

Court is also persuaded that Blair is seeking redress for an independent injury to his rights under

federal law.  In *Parkview Assoc. Partnership v. City of Lebanon*, 225 F.3d 321, 325-26 (3d Cir.

2000), the Court of Appeals held that *Rooker-Feldman* did not prevent the plaintiff from

pursuing disability-based discrimination claims in federal court.[2]  In sum, the Court concludes

that the *Rooker-Feldman* abstention doctrine does not apply in this case.


C. *Younger* Abstention

Defendants' primary argument is that this Court should abstain from hearing and

deciding this case under the *Younger* abstention doctrine.  In *Younger*, the United States Supreme

Court held that federal courts should abstain from enjoining state criminal prosecutions absent

extraordinary circumstances. The Supreme Court has since expanded the reach of *Younger* to

non-criminal judicial proceedings in which important state interests are involved. *Middlesex

County Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 432 (1982). *Younger* abstention

"reflects a strong federal policy against federal-court interference with pending state judicial

proceedings." *Id*. at 431.  The decision to abstain under Younger is discretionary.  *Addiction

Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005).

Although *Younger* abstention is founded on notions of comity, "the [mere] pendency of

an action in state court is no bar to proceedings concerning the same subject matter in the Federal

Court having jurisdiction." *Colorado River*, 424 U.S. at 817. "The presence of two parallel suits

... does not run afoul of *Younger*." *Schall v. Joyce*, 885 F.2d 101, 112 (3d Cir. 1989). This is true

even in cases where there exists a "potential for conflict in the results of the adjudications."

*Colorado River*, 424 U.S. at 816. A federal court, therefore, will only consider *Younger*

---

[2] In this case, unlike *Parkview*, Blair raised his disability discrimination claims in the state proceedings.

abstention when the requested equitable relief would constitute federal interference in state judicial or quasi-judicial proceedings. *Middlesex*, 457 U.S. at 431; *Frank Russell Co. v. Wellington Mgmt. Co., LLP*, 154 F.3d 97, 106 (3d Cir. 1998).

Abstention under *Younger* is appropriate only if (i) there are ongoing state proceedings which involve the would-be federal plaintiff that are judicial in nature, (ii) the state proceedings implicate important state interests, and (iii) the state proceedings afford an adequate opportunity to raise the federal claims. *Schall*, 885 F.2d at 106 (*citing Middlesex County*, 457 U.S. at 432). However, such a showing does not require that the federal court abstain. *Marks v. Stinson*, 19 F.3d 873, 882 (3d Cir. 1994). As a threshold condition to the above requirements, "*Younger* applies only when the relief the plaintiff seeks in federal court would interfere with the ongoing state judicial proceeding." *Grimm v. Borough of Norristown*, 226 F.Supp.2d 606 (E.D. Pa. 2002). Where the "federal proceedings are parallel but do not interfere with the state proceedings, the principles of comity underlying *Younger* abstention are not implicated." *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1201 (3d Cir. 1992); *see also Marks*, 19 F.3d at 882 ("a federal court will only consider *Younger* abstention when the requested equitable relief would constitute federal interference in state judicial or quasi-judicial proceedings."). *See Miller*, 2009 WL 1230877.

Defendants contend that all of the requirements for *Younger* abstention are met. Blair argues that *Younger* abstention does not apply because he filed his state court appeal in an abundance of caution in order to preserve that remedy and to mitigate his damages in this case. Blair represents that if this federal court grants his TRO motion, the state court appeal will be withdrawn. Blair further contends that the Commonwealth Court cannot provide a complete

remedy for his federal rights because he cannot recover attorney fees and monetary damages in that forum.

The Court is compelled to agree with Defendants. As to the first prong, it is undisputed that there are now ongoing state proceedings that are judicial in nature, in that Blair has filed an appeal of the SBN decision with the Commonwealth Court of Pennsylvania. Moreover, it is readily apparent that the litigation before the SBN was "judicial in nature" as well. Although the state court appeal had not yet been filed when Blair filed his Complaint in this Court, that state court appellate remedy was available and had not been exhausted. *See Loch v. Watkins*, 337 F.3d 574, 578-79 (6th Cir. 2003) (explaining that "all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings") (*citing Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975)).

The second prong is undisputed. Blair recognizes the state's legitimate interest in regulating and licensing nurses. Indeed, the Commonwealth's interest is well-established. Blair merely contends that the state interests must conform to federal law. This argument implicates the third and final prong of the *Younger* test, i.e., whether the state proceedings afford an adequate opportunity to raise federal claims.

The Pennsylvania courts are certainly able to adjudicate Blair's federal ADA and RA claims. Indeed, the ADA claim was actually raised by Blair during the SBN litigation and ruled upon. The SBN Final Order concluded that Blair was a "qualified individual with a disability under the ADA," although it also concluded that he had received a reasonable accommodation. SBN Final Order at 3-5. Instead of pursuing an appeal to the Commonwealth Court of Pennsylvania, Blair filed this case and now asks this (federal) court to reach a different result.

This is precisely the type of interference with an ongoing state proceeding which implicates *Younger* abstention.

Blair's contention that he is not able to obtain attorney fees and monetary damages in his state court appeal is also unavailing. In *Mazin v. Bureau of Professional and Occupational Affairs,* 950 A.2d 382, 391 (Pa. Commw. 2008) (arising from an appeal of a dentistry license decision), the Commonwealth Court explained that, to the extent that the plaintiff sought attorney fees and damages under an ADA claim that was not encompassed within the original jurisdiction of the Commonwealth Court, that claim would be transferred to the appropriate Court of Common Pleas.

In summary, the elements of *Younger* abstention are met and the Court will exercise its discretion to abstain. *Accord Lueder v. New Jersey SBN*, 2000 WL 959490 (D.N.J. 2000); *Feingold v. Office of Disciplinary Counsel,* 415 Fed. Appx. 429 (3d Cir. 2011) (attorney challenged licensing decision and Court held abstention proper under either *Rooker-Feldman* or *Younger*).

Conclusion

The Court commends Blair's efforts at rehabilitation and recovery from his heroin addiction and counsel's vigorous and professional advocacy on his behalf. Nevertheless, *Younger* abstention is warranted. Blair has been involved in extensive quasi-judicial proceedings in Pennsylvania regarding his nursing license. His appeal rights have not been exhausted and his appeal to the Commonwealth Court is now pending. The SBN directly adjudicated his disability discrimination claim and Blair may continue to pursue his federal ADA and RA claims in the Pennsylvania courts. The licensing and regulation of medical professionals, such as nurses, is an

important state interest and the intrusion of a federal court is not warranted under the facts and circumstances of this case.  Indeed, the Court finds and rules that adherence to the principles of comity and respect for important state governmental functions make *Younger* abstention particularly compelling under the circumstances of this case.

In accordance with the foregoing, the MOTION TO DISMISS (Document No. 6) filed by Defendants will be **GRANTED**; the MOTION FOR TEMPORARY RESTRAINING ORDER (Document No. 2) filed by Plaintiff will be **DENIED AS MOOT**; and the case will be closed.

An appropriate Order follows.


McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIK BLAIR,** *R.N.*, | ) |
| **Plaintiff,** | ) |
| | ) |
| v | ) **2:12-cv-683** |
| **COMMONWEALTH OF PENNSYLVANIA,** | ) |
| **PENNSYLVANIA DEPARTMENT OF STATE,** | ) |
| **PENNSYLVANIA BUREAU OF** | ) |
| **PROFESSIONAL AND OCCUPATIONAL** | ) |
| **AFFAIRS, PENNSYLVANIA DIVISION OF** | ) |
| **PROFESSIONAL HEALTH MONITORING** | ) |
| **PROGRAMS, THE DISCIPLINARY** | ) |
| **MONITORING UNIT, THE PENNSYLVANIA** | ) |
| **NURSE PEER ASSISTANCE PROGRAM,** | ) |
| **VOLUNTARY RECOVERY PROGRAM** | ) |
| *and* **PENNSYLVANIA STATE SBN** | ) |
| **Defendants.** | ) |
| | ) |

## ORDER OF COURT

AND NOW this 2nd day of July, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that the MOTION TO DISMISS (Document No. 6) filed by Defendants is **GRANTED**; and the MOTION FOR TEMPORARY RESTRAINING ORDER (Document No. 2) filed by Plaintiff is **DENIED AS MOOT.**  The clerk shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:   **Charles W. Jelley, Esquire**
      Email: cjelley@trembaandjelley.com
      **Thomas L. Donahoe, Esquire**
      Email: tdonahoe@attorneygeneral.gov
      **Ansley S. Westbrook II**
      Email: ansley.westbrook@dinslaw.com